**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| THOMAS JOHNSON, Individually and For Others Similarly Situated | **Case No. 7:24-cv-00168** |
| | Jury Trial Demanded |
| v. | |
| | FLSA Collective Action |
| NORFLEET LAND SERVICES, LLC | Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Thomas Johnson ("Johnson") brings this collective action lawsuit to recover unpaid overtime wages and other damages from Norfleet Land Services, LLC ("NLS") under the Fair Labor Standards Act ("FLSA").

2. NLS employed Johnson as one of its Day Rate Workers (defined below).

3. NLS pays Johnson and the other Day Rate Workers by the day.

4. Johnson and the other Day Rate Workers regularly work more than 40 hours a workweek.

5. But NLS does not pay Johnson and its other Day Rate Workers overtime.

6. Instead, NLS Johnson and its other Day Rate Workers pays them a flat amount for each day worked, regardless of the total number of hours they worked in a workday or workweek (a "day rate").

7. NLS pays Johnson and its other Day Rate Workers under its uniform day rate pay scheme regardless of any individualized factors.

8. NLS's uniform day rate pay scheme violates the FLSA by depriving Johnson and the other Day Rate Workers of overtime wages for all hours worked in excess of 40 a workweek.

## JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10. This Court has general personal jurisdiction over NLS because NLS is a domestic limited liability company.

11. Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

12. Specifically, Johnson worked for NLS and was paid under NLS's day rate pay scheme in and around Ector County, Texas, which is in this District and Division.

13. Johnson has not entered into an arbitration agreement covering any of the allegations in this Complaint.

## PARTIES

14. Johnson worked for NLS as a Title Agent from approximately October 2023 to March 2024. Johnson's position is often referred to as Landman, Right of Way Agent, Abstractor, or Acquisition Agent.

15. Throughout his employment, NLS paid Johnson a flat daily amount and failed to pay him overtime compensation regardless of the number of hours Johnson worked in a workday or workweek.

16. Johnson's written consent is attached as **Exhibit 1**.

17. Johnson brings this collective action on behalf of himself and all other similarly situated workers who worked for, or on behalf of, NLS who were paid under its day rate pay scheme.

18. NLS paid each of these employees a flat amount for each day they worked and failed to pay them overtime when they worked more than 40 hours in a workweek in violation of the FLSA.

19. The putative collective of similarly situated employees is defined as:

> **All individuals who worked for NLS who were paid a day rate with no overtime at any time during the past 3 years ("Day Rate Workers").**

20. NLS is a Texas limited liability company headquartered in Fort Worth, Texas.

21. NLS can be served through its registered agent: **James C. Fields, 3813 West 6th Street, Suite 100, Fort Worth, Texas 76107**, or wherever he may be found.

## FLSA COVERAGE

22. At all relevant times, NLS was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23. At all relevant times, NLS was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

24. At all relevant times, NLS was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cell phones, computers, pens, pencils, etc. – that have been moved in or produced for commerce.

25. At all relevant times, NLS has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

26. At all relevant times, the Day Rate Workers were NLS's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

27. At all relevant times, the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

28. NLS treated Johnson and the other Day Rate Workers as employees and uniformly dictated the pay and other employment practices it applied to them.

29. NLS uniformly paid Johnson and the other Day Rate Workers under its illegal day rate pay scheme.

30. NLS applied its illegal day rate pay scheme to the Day Rate Workers regardless of any alleged individualized factors, such as specific job title or geographic location.

31. As a result of NLS's uniform day rate pay scheme, Johnson and the other Day Rate Workers did not receive premium overtime wages when they worked more than 40 hours a workweek.

32. NLS's uniform day rate pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

33. NLS is a "Texas-based company that provides land and right-of-way services in support of energy development to both private and public organizations across the Southern United States."[1]

34. To meet its business objectives, NLS hires workers, like Johnson and the other Day Rate Workers, to provide right-of-way land services to its clients.

35. NLS uniformly pays these employees (including Johnson and the other Day Rate Workers) according to its illegal day rate pay scheme.

36. While exact job titles and precise job duties may differ, these employees are subjected to the same or similar illegal pay practice—NLS's day rate pay scheme—for similar work.

37. For example, Johnson worked for NLS as a Title Agent in Texas from approximately October 2023 until March 2024.

---

[1] https://www.norfleetland.com/about-us (last visited July 18, 2024).

38. As a Title Agent, Johnson's primary duties included overseeing the acquisition, lease, disposal, and relocation processes for NLS's clients, in accordance with NLS's policies and procedures and within the parameters set by NLS (and its clients).

39. Throughout his employment, Johnson typically worked approximately 7 to 9 hours a day for 6 days a week (42 to 54 hours a workweek).

40. Johnson worked in accordance with the schedule set by NLS.

41. Despite knowing Johnson regularly worked hours in excess of 40 a workweek, NLS did not pay him required overtime compensation.

42. Instead, NLS paid Johnson under its illegal day rate pay scheme.

43. Specifically, NLS paid Johnson approximately $370 each day he actually worked, regardless of the number of hours he worked that workday or workweek:

| PAY | Hours | Rate | Current | YTD |
|---|---|---|---|---|
| Reimbursement | - | - | 0.00 | 22.27 |
| Per Diem | - | - | 0.00 | 7,657.00 |
| Day Rate | - | - | 4,810.00 | 35,890.00 |

44. As a result, NLS failed to pay Johnson overtime when he worked over 40 hours in a week in violation of the FLSA.

45. NLS likewise paid Johnson a per diem of approximately $230 a day.

46. And NLS pays its other Day Rate Workers according to the same illegal day rate pay scheme it imposed on Johnson.

47. That is, NLS pays its other Day Rate Workers a flat amount for each day worked, regardless of the total number of hours they worked in a workday or workweek.

48. Like Johnson, the other Day Rate Workers work at least 7 to 9 hours a day for 6 days a week (42 to 54 hours a workweek).

49. And like Johnson, the other Day Rate Workers work in accordance with the schedule set by NLS.

50. Despite knowing its Day Rate Workers regularly work overtime, NLS does not pay them overtime wages.

51. Instead, NLS pays its Day Rate Workers a flat amount for each day worked, regardless of the number of hours they worked that workday or workweek.

52. As a result, NLS fails to pay its Day Rate Workers overtime when they work more than 40 hours a week, in willful violation of the FLSA.

53. NLS never paid Johnson and the other Day Rate Workers on a "salary basis."

54. NLS does not pay Johnson and the other Day Rate Workers a guaranteed amount on a weekly or less frequent basis that is not subject to reduction based on the quality or quantity of work performed.

55. If Johnson and the other Day Rate Workers do not work, they do not get paid.

56. Rather, NLS only pays Johnson and the other Day Rate Workers their set daily rates for the actual days they work.

57. Johnson's and the other Day Rate Workers' day rates do not increase when they work more than 40 hours in a week.

58. Thus, NLS never paid Johnson and its other Day Rate Workers on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 143 S. Ct. 677, 685 (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

59. Because NLS fails to pay Johnson and its other Day Rate Workers on a "salary basis," they are all non-exempt employees entitled to overtime.

60. But NLS does not pay Johnson and its other Day Rate Workers overtime when they work more than 40 hours in a workweek, in willful violation of the FLSA.

## Collective Action Allegations

61. Johnson incorporates all other paragraphs by reference.

62. Like Johnson, the other Day Rate Workers are uniformly victimized by NLS's illegal day rate pay scheme.

63. Other Day Rate Workers worked with Johnson and indicated they were paid in the same manner, performed similar work, and were subject to NLS's same illegal day rate pay scheme.

64. Based on his experience with NLS, Johnson is aware NLS's illegal day rate pay scheme was imposed on the other Day Rate Workers.

65. The Day Rate Workers are similarly situated in the most relevant respects.

66. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

67. Any relevant exemption defenses would require NLS to pay the Day Rate Workers on a "salary basis."

68. Because NLS fails the "salary basis" test with respect to the Day Rate Workers, the specific job duties performed by those employees are largely irrelevant.

69. The only *relevant* inquiry is whether the Day Rate Workers were paid a day rate with no overtime wages when they worked more than 40 hours in a workweek.

70. Therefore, the specific job titles or precise job locations of the various Day Rate Workers do not prevent collective treatment.

71. Rather, NLS's uniform day rate pay scheme renders Johnson and the other Day Rate Workers similarly situated for the purposes of determining their right to overtime pay.

72. NLS's records reflect the number of days and/or hours the Day Rate Workers worked each week.

73. NLS's records also show it paid the Day Rate Workers a day rate with no overtime wages when they worked more than 40 hours in a workweek.

74. The back wages owed to Johnson and the other Day Rate Workers can therefore be calculated using the same formula applied to the same records.

75. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to NLS's records, and there is no detraction from the common nucleus of liability facts.

76. Therefore, the issue of damages does not preclude collective treatment.

77. Johnson's experiences are therefore typical of the experiences of the Day Rate Workers.

78. Johnson has no interest contrary to, or in conflict with, the Day Rate Workers that would prevent collective treatment.

79. Like each Day Rate Worker, Johnson has an interest in obtaining the unpaid wages owed under federal law.

80. Absent a collective action, many Day Rate Workers will not obtain redress for their injuries, and NLS will reap the unjust benefits of violating the FLSA.

81. Further, even if some of the Day Rate Workers could afford individual litigation, it would be unduly burdensome to the judicial system.

82. Concentrating the litigation in one forum will promote judicial economy and consistency, and parity among the Day Rate Workers' claims.

83. Johnson knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

84. As part of its regular business practices, NLS intentionally, willfully, and repeatedly violated the FLSA with respect to the Day Rate Workers.

85. NLS's illegal day rate pay scheme deprived Johnson and the other Day Rate Workers of the premium overtime wages they are owed under federal law.

86. There are many similarly situated Day Rate Workers who have been denied overtime compensation in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

87. The Day Rate Workers are known to NLS, are readily identifiable, and can be located through NLS's business and personnel records.

### NLS's FLSA Violations Were Willful and/or Done in Reckless Disregard of the FLSA

88. Johnson incorporates all other paragraphs by reference.

89. NLS knew it was subject to the FLSA's overtime provisions.

90. NLS knew the FLSA required it to pay non-exempt employees, including the Day Rate Workers, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 a workweek.

91. NLS knew each Day Rate Worker worked more than 40 hours in at least one workweek during the relevant period.

92. NLS knew it paid its Day Rate Workers on a daily basis.

93. NLS knew it paid its Day Rate Workers a day rate and no overtime for their hours worked in excess of 40 a workweek.

94. NLS knew it did not pay its Day Rate Workers on a "salary basis."

95. NLS knew it did not pay its Day Rate Workers any guaranteed salary that was not subject to reduction based on the number of days worked.

96. NLS knew that any "salary" the Day Rate Workers purportedly received was not "reasonably related" to their actual earnings.

97. Thus, NLS knew its day rate pay scheme did not satisfy the "salary basis" test.

98. NLS knew it needed to pass the "salary basis" test to qualify for the exemptions it claimed with respect to its Day Rate Workers.

99. Nonetheless, NLS uniformly misclassified its Day Rate Workers as exempt and refused to pay them overtime.

100. NLS knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA.

101. NLS knowingly, willfully, and/or in reckless disregard carried out its illegal day rate pay scheme that systematically deprived the Day Rate Workers of overtime for their hours worked over 40 in a workweek in violation of the FLSA.

**NLS's FLSA Violations Were Not Done in Good Faith**

102. Johnson incorporates all other paragraphs by reference.

103. NLS did not seek the advice of counsel regarding classifying its Day Rate Workers as exempt.

104. NLS did not receive advice from counsel regarding classifying its Day Rate Workers as exempt.

105. NLS did not rely on the advice of counsel in deciding to classify its Day Rate Workers as exempt.

106. NLS did not seek the advice of counsel regarding paying its Day Rate Workers a day rate with no overtime.

107. NLS did not receive advice from counsel regarding paying its Day Rate Workers a day rate with no overtime.

108. NLS did not rely on the advice of counsel in deciding to pay its Day Rate Workers a day rate with no overtime.

109. NLS did not investigate whether its day rate pay scheme satisfied the "salary basis" test.

110. NLS did not investigate whether its Day Rate Workers were non-exempt.

111. NLS's decision to misclassify its Day Rate Workers as exempt was neither reasonable nor made in good faith.

112. NLS's decision not to pay its Day Rate Workers overtime was neither reasonable nor made in good faith.

## CAUSE OF ACTION

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA (COLLECTIVE ACTION)

113. Johnson incorporates all other paragraphs by reference.

114. Johnson brings his FLSA claims as a collective action on behalf of himself and the other Day Rate Workers.

115. NLS violated, and is violating, the FLSA by employing non-exempt employees (Johnson and the other Day Rate Workers) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked in excess of 40 a workweek.

116. NLS's unlawful conduct harmed Johnson and the other Day Rate Workers by depriving them of the overtime wages they are owed.

117. Accordingly, NLS owes Johnson and the other Day Rate Workers the difference between the rate actually paid and the proper overtime rate.

118. Because NLS knew, or showed reckless disregard for whether, its day rate pay scheme violated the FLSA, NLS owes Johnson and the other Day Rate Workers these wages for at least the past 3 years.

119. NLS is also liable to Johnson and the other Day Rate Workers for an amount equal to all their unpaid overtime wages as liquidated damages.

120. Finally, Johnson and the other Day Rate Workers are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

121. Johnson demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Johnson, individually and on behalf of the other Day Rate Workers, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Day Rate Workers allowing them to join this action by filing a written notice of consent;

b. An Order finding NLS liable to Johnson and the other Day Rate Workers for unpaid overtime wages owed under the FLSA, plus liquidated damages in amount equal to their unpaid wages;

c. A Judgment against NLS awarding Johnson and the other Day Rate Workers all their unpaid wages, liquidated damages, and any other penalties available under the FLSA;

d. An Order awarding attorney's fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Dated: July 19, 2024.

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: */s/ Michael A. Josephson*

Michael A. Josephson
TX Bar No. 24014780
Andrew W. Dunlap
TX Bar No. 24078444
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR JOHNSON & THE DAY RATE WORKERS**